IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anna J. Bates,                          :
                                        : No. 339 C.D. 2016
                                        : Argued:  October 18, 2016
                           Appellant    :
                                        :
              v.                        :
                                        :
Delaware County Prison                  :
Employees' Independent Union,           :
and Community Education Centers,        :
Inc. (a/k/a George W. Hill             :
Correctional Facility)                  :
                                        :
              v.                        :
                                        :
Community Education Centers, Inc.       :
(a/k/a George W. Hill Correctional     :
Facility)                               :
                                        :
              v.                        :
                                        :
The Security, Police, and Fire          :
Professionals of America, Local 500     :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge (P.)

OPINION
BY SENIOR JUDGE FRIEDMAN              FILED:  November 16, 2016


        Anna J. Bates appeals from the August 26, 2015, order of the Court of
Common Pleas of Delaware County (trial court), entering summary judgment on all
claims in favor of Community Education Centers, Inc. (CEC).  Bates argues that the
trial court erred in granting summary judgment because: (1) it violated the coordinate

jurisdiction rule, which generally prohibits a transferee judge from overruling an order entered by a prior judge, and (2) genuine issues of material fact exist. For the reasons stated below, we vacate the trial court's order granting summary judgment[1] and remand the case for trial.

Bates was an employee of CEC. She worked as a corrections officer at the George W. Hill Correction Facility, where she was covered by a collective bargaining agreement (CBA). On March 7, 2012, CEC terminated her employment for misconduct that occurred on March 6, 2012, when Bates admittedly left her duty post.

On September 6, 2012, Bates filed an eight count complaint against CEC and her union, Delaware County Prison Employees' Independent Union (DCPEIU). Bates was unable to serve DCPEIU because it dissolved on or about October 24, 2012. By Affiliation Agreement dated October 24, 2012, the CBA between DCPEIU and CEC was assigned to a new union - the Security, Police and Fire Professionals of America (SPFPA). Although Bates did not serve the successor union, CEC filed a joinder complaint adding SPFPA.[2]

---

[1] This court's scope of review of a trial court's order granting summary judgment is plenary and therefore we apply the same standards for summary judgment as does the trial court. *Weckel v. Carbondale Housing Authority*, 20 A.3d 1245, 1248 n.4 (Pa. Cmwlth. 2011). This court's standard of review permits reversal of a trial court's order granting summary judgment only where it is established that the trial court committed an error of law or abused its discretion. *Id.*

[2] Pursuant to Pa. R.A.P. 2137, SPFPA adopted by reference CEC's brief on appeal. SPFPA also participated in the oral argument of this case, urging this court to affirm the grant of summary judgment in CEC's favor.

Five counts of Bates' complaint were against CEC.[3] Count I of Bates' complaint claimed wrongful termination. Count II claimed interference with unemployment compensation benefits. Count III claimed breach of contract, i.e., the CBA. Count IV claimed breach of duty of good faith and fair dealing. Count V claimed negligent misrepresentation/fraud for "mischaracterizing" the reasons for her termination.

While the case was before Judge Proud, CEC filed three motions attempting to dismiss the complaint. All three motions were denied by Judge Proud without findings or opinion. Those motions were: (1) preliminary objections overruled by order of January 10, 2013; (2) a motion for summary judgment, denied by order of February 11, 2014; and (3) a motion for reconsideration of summary judgment, denied by order of May 30, 2014.

On June 25, 2014, the case was transferred to a new judge, who thereafter set a deadline for discovery and the filing of dispositive motions. (Trial Ct. Op., 8/26/15, at 2.) Following the close of discovery, on June 29, 2015, CEC filed its second motion for summary judgment. (*Id.*) Bates filed a response to the motion. (*Id.*) Bates argued in her response that "judges of coordinate jurisdiction sitting in the same case should not overrule each other[']s decisions," citing *Commonwealth v. Starr,* 664 A.2d 1326, 1331 (Pa. 1995) and *Okkerse v. Howe,* 556 A.2d 827, 831 (Pa. 1989). (Bates' Resp. in Opp'n to CEC's Mot. for Summ. J. at 2-3.) Bates also argued that CEC's second motion for summary judgment presented the same arguments as did its first motion for summary judgment and thus relied on the briefs Bates had

---

[3] The remaining three counts were against DCPEIU, her union.

filed in response to the first motion. On August 26, 2015, the trial court granted summary judgment on all claims in favor of CEC. (Trial Ct. Op., 8/26/15, at 3.)

Bates filed a notice of appeal. In its Pa. R.A.P. 1925(a) opinion, the trial court considered the issues raised by Bates in her statement of matters[4] complained of on appeal. The trial court explained its reasons for granting summary judgment, specifying why each count failed as a matter of law.

With respect to whether there existed any issues of material fact, the trial court considered Bates' contention that the CBA required progressive discipline instead of termination. The trial court concluded, however, that Article 13.04 of the CBA specifically permits immediate termination when the employee abandons "a duty post before being properly relieved unless performing other usual and customary duties." (*Id.* at 10.) The trial court determined that Bates acknowledged in her complaint that she left her post "without permission and without being relieved to perform a security check, which was not customarily performed by the officer at her post, but by a rover." (*Id.* at 11.) The trial court also determined that, although she informed her supervisor she was leaving, she did not obtain authorization to leave and that Bates left "to discuss a dispute about overtime." (*Id.* at 11-12) Finally, the trial court determined that no material fact issues existed, based on Bates' admission in her deposition that she left her assignment without permission. (*Id.*)

---

[4] In 2007, Pa. R.A.P. 1925(b) was amended; it now refers to a "statement of *errors* complained of on appeal." (Emphasis added.)

Next, the trial court considered Bates' argument that Judge Proud's prior orders precluded the entry of summary judgment. Bates' argument is based on the coordinate jurisdiction rule, which the trial court acknowledged "generally precludes a transferee judge from altering resolutions of legal questions previously decided by another judge in the same jurisdiction." (Trial Ct. Op., 8/26/15, at 12, citing *Zane v. Friends Hospital,* 836 A.2d 25, 29 (Pa. 2003.)) Regarding Judge Proud's prior order overruling CEC's preliminary objections, the trial court explained that a prior ruling on preliminary objections does not preclude a contrary ruling on a subsequent motion for summary judgment.

The trial court explained that, when Judge Proud decided the first motion for summary judgment, discovery had not been completed; thus the case was at a different stage when the trial court decided the second motion for summary judgment. (Trial Ct. Op., 8/26/15, at 13.) The trial court added that, "where there is a change in controlling law, where there is a substantial change in facts or evidence or where the prior ruling is clearly erroneous and would create a manifest injustice if allowed," the coordinate jurisdiction rule would not be applied. (*Id.* at 12-13.) The trial court, therefore, concluded that its grant of summary judgment did not violate the coordinate jurisdiction rule.

Bates also argued that CEC was estopped from raising issues decided in Judge Proud's order overruling CEC's preliminary objections because it did not immediately appeal that order. Bates argued that CEC's preliminary objections were in the nature of a motion to compel arbitration, and, under Pa. R.A.P. 311(a)(8), dismissal of preliminary objections in the nature of a motion to compel arbitration are

5

immediately appealable. The trial court disagreed, explaining that CEC's preliminary objections were not in the nature of a motion to compel and, even if CEC had a right to file an immediate appeal, it was not required to do so. (*Id.* at 14-15.)

We frame the issues raised by Bates on appeal as follows. First, whether CEC is estopped from raising issues that it previously raised in its preliminary objections when it did not immediately appeal the order denying its preliminary objections. Second, whether the trial court abused its discretion by granting summary judgment in favor of CEC, where a prior judge had entered an order overruling CEC's preliminary objections. Third, whether the trial court abused its discretion by granting summary judgment in favor of CEC, where a prior judge had entered an order denying CEC's motion for summary judgment. Fourth, whether the trial court erred in granting summary judgment on the merits because genuine issues of material fact existed.

### **Whether CEC was estopped from raising issues<br>previously raised in its preliminary objections**

We first consider Bates' claim that CEC is estopped from raising issues previously raised in its preliminary objections because CEC did not immediately appeal the order denying its preliminary objections. Bates reasons that CEC's failure to immediately appeal the denial of its preliminary objections barred CEC from re-raising in its motion for summary judgment the same issues that CEC previously raised in its preliminary objections and, therefore, it was error for the trial court to consider those issues.

6

Bates argues that Judge Proud's order overruling CEC's preliminary objections was immediately appealable because the order determined that the appropriate forum was a court of law instead of arbitration. However, Judge Proud's order simply overruled the preliminary objections; it was not accompanied by an opinion. (Judge Proud's Order, 1/10/13.) The order made no determinations at all, and certainly not regarding the appropriate forum. In its Pa. R.A.P. 1925(a) opinion, the trial court pointed out that CEC's preliminary objections were not in the nature of a motion to compel arbitration, but rather simply argued that Bates had not exhausted the administrative remedies in the CBA. (Trial Ct. Op., 8/26/15, at 15.) Also, the trial court explained that, even if CEC had a right to immediately appeal the order, its failure to do so did not constitute a waiver. (*Id.*)

The trial court's decision in this regard was correct. CEC was not required to immediately appeal after the denial of its preliminary objections because CEC's preliminary objections were not in the nature of a motion to compel arbitration. Rather, they requested that all of Bates' claims be dismissed with prejudice. Regarding the CBA, the preliminary objections merely asserted that, because Bates' employment was governed by a CBA, "she may not assert a claim for wrongful termination." (CEC's Prelim. Objections at 5, ¶9.) Moreover, even if the preliminary objections were in the nature of a motion to compel, section 7320(a)(1) of the Uniform Arbitration Act, 42 Pa. C.S. §7320(a)(1), states only that "[a]n appeal *may be taken* . . . from a court order denying an application to compel arbitration." (Emphasis added.) Thus, there was no requirement to immediately appeal the order. Accordingly, Bates' claim that CEC was required to immediately appeal Judge

7

Proud's order denying its preliminary objections is without merit. CEC was, therefore, free to re-raise those arguments to the trial court.

## Coordinate Jurisdiction Rule

Bates next contends that the coordinate jurisdiction rule prohibited the trial court from entertaining CEC's second motion for summary judgment after Judge Proud had (1) entered an order denying CEC's preliminary objections, (2) entered an order denying CEC's first motion for summary judgment, and (3) entered an order denying reconsideration of CEC's first motion for summary judgment.

"The coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane,* 836 A.2d at 29, citing *Commonwealth v. Starr,* 664 A.2d 1326, 1331 (Pa. 1995). In *Zane,* the Pennsylvania Supreme Court explained the basis for the rule:

> [The] rule is "based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency." Furthermore, . . . the coordinate jurisdiction rule serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation.

*Id.* (Emphasis added.) (Citation omitted.)

"There are, however, situations when the rule does not apply." *Ryan v. Berman*, 813 A.2d 792, 794 (Pa. 2002). Additionally, where the rule does apply,

8

"[d]eparture from the rule is allowed in 'exceptional circumstances.'" *Zane*, 836 A.2d at 29 (citation omitted). We discuss those situations and exceptions below.

At the outset, it is important to note that the fact that Judge Proud's orders were entered without opinions does not make a difference in our analysis of the coordinate jurisdiction rule. *See Goldey v. Trustees of the University of Pennsylvania,* 675 A.2d 264, 266 (Pa. 1996). In *Goldey,* our Pennsylvania Supreme Court noted that, because opinions explaining the denial of pretrial motions are not required by our rules of civil procedure, any exception for orders issued without opinions "could swallow the rule." *Id.* That Court held that "[t]he presence or absence of an opinion in support of the initial ruling is not controlling." *Id.* at 267.

**Whether the trial court abused its discretion when it granted summary judgment in favor of CEC, where a prior judge had entered an order overruling CEC's preliminary objections**

A situation when the coordinate jurisdiction rule does not apply is "where the motions differ in kind." *Ryan,* 813 A.2d at 794, citing *Goldey,* 675 A.2d at 267. "The rule that one judge should not overrule another on the same court, the coordinate jurisdiction rule, does *not* apply where the motions are of a different type. . . ." *Garzella v. Borough of Dunmore,* 62 A.3d 486, 497 (Pa. Cmwlth.), *appeal denied,* 72 A.3d 605 (Pa. 2013).

Our Supreme Court has made clear that a prior ruling on preliminary objections does not preclude a contrary ruling by a new judge on a subsequent motion for summary judgment. *See Goldey,* 675 A.2d at 267. That Court explained that, under the coordinate jurisdiction rule, "a later motion should not be entertained or

9

granted when a motion *of the same kind* has previously been denied . . . ." *Id.* The Court reasoned that, because preliminary objections "differ in kind" from motions from summary judgment, a new judge ruling on a later motion may grant relief even though a prior judged denied an earlier motion. *Id.*

In *Garzella,* this court held that the coordinate jurisdiction rule "does *not* bar a judge on summary judgment from overruling another judge's decision on preliminary objections . . . , even on an identical issue." 62 A.3d at 497. *See also Hunter v. City of Philadelphia,* 80 A.3d 533, 537 (Pa. Cmwlth. 2013). Therefore, Bates' assertion that Judge Proud's prior order denying CEC's preliminary objections precluded the trial court from granting summary judgment has no merit.

### Whether the trial court abused its discretion when it granted summary judgment in favor of CEC, where a prior judge had entered an order denying CEC's motion for summary judgment

Bates asserts that Judge Proud's order denying CEC's first motion for summary judgment barred the trial court from considering CEC's second motion for summary judgment. CEC filed the second summary judgment motion 13 months after Judge Proud's order denying reconsideration of his order denying CEC's first motion for summary judgment. Because the motions were of the same kind, we, as did the trial court, begin our inquiry with our Supreme Court's opinion in *Zane.*

Relying on *Zane,* the trial court correctly noted that the prohibition against a transferee judge from granting a motion previously denied by another judge "is not absolute." (Trial Ct. Op., 8/26/15, at 12.) There are two exceptions: (1) when there has been a change in the controlling law or where there was a substantial

10

change in facts or evidence, and (2) the prior ruling was clearly erroneous and would create a manifest injustice if followed. *Zane*, 836 A.2d at 29.

## **Whether there was a substantial change in facts or evidence**

The first exception is "when there has been a change in the controlling law or where there was a *substantial* change in the facts or evidence" between the first and second motions. *Id.* (emphasis added.) Here, there is no claim that the law changed, only that discovery "was at completely different stages" between the time when the first and second motions for summary judgment were decided. (Trial Ct. Op., 8/26/15, at 13.)

In *Starr*, 664 A.2d at 1332, our Supreme Court explained that, "where the evidence is substantially the same as that originally ruled upon by the first judge, a second judge commits a *per se* abuse of discretion in overruling or vacating the prior order." Thus, the crucial question here is whether, after Judge Proud's order of May 30, 2014, denying reconsideration of his order denying summary judgment, there was any information that constituted "a substantial change in facts or evidence" so that the trial court could properly entertain and decide the second motion for summary judgment. Unless new facts or evidence had come to light between Judge Proud's orders denying CEC's first motion for summary judgment and motion for reconsideration and CEC's second motion for summary judgment, it would be an abuse of discretion for the trial court to entertain the second motion for summary judgment.

11

CEC argues that, because the second motion for summary judgment was filed after discovery closed, the trial court was able to consider the motion "on a full and final record." (CEC's Br. at 11, 18.) Indeed, the trial court stated, "Clearly, discovery between the parties was at completely different stages between the prior [o]rders . . . and the . . . [o]rder currently at issue." (Trial Ct. Op., 8/26/15, at 13.) However, intervening discovery[5] between the first and second motions is not enough; *Zane* and *Starr* require a "substantial change in facts or evidence" between the motions. Yet, neither the trial court nor CEC points to any particular facts, evidence, or discovery that would constitute any change, let alone the required "substantial change in the facts or evidence" between the first and second motions.[6] In fact, the

---

[5] At oral argument, Bates' counsel stated that no additional discovery occurred after CEC's first motion for summary judgment. CEC's counsel did not challenge that statement. However, additional discovery would not have made a difference unless the second motion for summary judgment was based on a "substantial change in facts or evidence" obtained as a result of the additional discovery. *See Zane* and *Starr.*

[6] In support of its argument that intervening discovery permits the second motion, CEC cites *Petrongola v. Comcast-Spectacor, L.P.,* 789 A.2d 204 (Pa. Super. 2001); *Herczeg v. Hampton Township Municipal Authority*, 766 A.2d 866, 870 (Pa. Super. 2001); and *D'Errico v. DeFazio,* 763 A.2d 424 (Pa. Super. 2000). However, each of those cases involved the grant of a summary judgment motion or a motion in the nature of a summary judgment motion, after an order denying a motion differing in kind (preliminary objections or judgment on the pleadings). Each case confirmed the well-settled rule that motions differing in kind do not implicate the coordinate jurisdiction rule. Additionally, in *Petrongola*, the motions had been decided by the *same* judge, also not implicating the coordinate jurisdiction rule. 789 A.2d at 214-15. In *Petrongola,* for example, in deciding that summary judgment was proper, the court did note that the judge considering the summary judgment motion had a more complete record as a result of discovery having occurred following denial of preliminary objections; however, as explained above, the more complete record was not the only consideration. Because the first and second motions differed in kind, there was no need to come within an exception to the coordinate jurisdiction rule. As the court in *Petrongola* pointed out, "the rule is not intended to preclude granting summary judgment following the denial of preliminary objections." 789 A.2d at 214.

12

trial court's opinion says very little about the evidence, except that in her deposition Bates admitted to leaving her duty post. However, Bates' deposition occurred on October 28, 2013, *before* the first motion for summary judgment, and CEC relied on Bates' deposition in support of its first summary judgment motion, which was denied by Judge Proud on February 11, 2014. Thereafter, CEC moved for reconsideration of Judge Proud's order denying summary judgment, and Judge Proud denied reconsideration by order of May 30, 2014. CEC has not identified any new facts or evidence adduced between May 30, 2014, and June 29, 2015, when CEC filed its second motion for summary judgment.

The facts of the instant case are similar to those in *Sanchez v. Philadelphia Housing Authority*, 611 A.2d 346 (Pa. Cmwlth. 1992). Like CEC here, the defendant in *Sanchez* argued that intervening discovery between the first and second summary judgment motions made the second motion and order appropriate. *See id.,* 611 A.2d at 349. However, this court required that "new evidence" must exist to warrant the second judge's consideration of the motion. *Id.* Because no new evidence existed to warrant the second judge's consideration of the second summary judgment motion, this court determined that the second judge erred in allowing the defendant to "relitigate its immunity defense in a second motion for summary judgment." *Id.* In so ruling, this court distinguished *Bersani v. School District of Philadelphia,* 456 A.2d 151, 153 (Pa. Super. 1982), which reached an opposite conclusion because of "the large amount of new information added to the record in the time period between the two motions" for summary judgment. *Sanchez,* 611 A.2d at 349.

13

In *Sanchez,* the first judge had denied defendant's motion for summary judgment which had asserted governmental immunity from suit.  Thereafter, "both parties filed requests for admissions and interrogatories."  *Id.* at 348.  Three years after the denial of the first summary judgment motion, a second judge granted the defendant's second motion for summary judgment, "finding insufficient facts to bring the action within any of the exceptions to governmental immunity."  *Id.*  On appeal, in *Sanchez,* this court carefully scrutinized the first and second summary judgment motions and concluded that "both motions asserted entitlement to governmental immunity[,] and the second motion presented no new factual evidence which warranted a relitigation of the immunity question."  611 A.2d at 348-49.

In *Campbell v. Attanasio,* 862 A.2d 1282, 1285-86 (Pa. Super. 2004), the Superior Court held that a trial judge's grant of defendant's motions *in limine* and dismissing plaintiff's case was error because a prior judge had denied a substantially similar motion for summary judgment.  The court noted that the motions raised the same legal issue, and there was no indication that the second judge "considered additional facts or evidence that had not been presented to" the first judge.  *Id*. at 1287.

A comparison of CEC's first summary judgment motion filed on December 13, 2013, with CEC's second summary judgment motion filed on June 29, 2015, reveals no substantive difference.  Accordingly, we cannot find that there was a substantial change in the facts or evidence between CEC's first and second motions for summary judgment.  Here, because "the evidence is substantially the same as that originally ruled upon by the first judge," we must conclude that the "second judge commit[ed] a *per se* abuse of discretion in overruling or vacating the prior order"

14

(*see Starr*, 664 A.2d at 1332), unless we find that the second exception to the coordinate jurisdiction rule applies. Accordingly, we examine whether the second exception identified in *Zane* applies to the trial court's order in this case.

## Whether the prior holding was clearly erroneous and would have created a manifest injustice

The second exception to the coordinate jurisdiction rule upon which the trial court relied is "where the prior ruling is clearly erroneous *and* would create a manifest injustice if allowed." (Trial Ct. Op., 8/26/15, at 12, citing *Zane,* 836 A.2d at 29 (emphasis added.)) In *Zane,* our Supreme Court succinctly explained the reasons behind this exception:

> To accede to a coordinate judge's order that is clearly erroneous would be not only to permit an inequity to work on the party subject to the order, but would allow an action to proceed in the face of almost certain reversal on appellate review. Moreover, the requirement that the prior holding also create a manifest injustice serves as a significant curb on the exception so that it would apply to only those situations in which adhering to the prior holding would be, in essence, plainly intolerable.

*Zane*, 836 A.2d at 29.

*Zane* is the polestar case on this exception. In *Zane,* a trial court judge had ordered the defendant to produce certain mental health records over the defendant's objection that the records were confidential and not subject to disclosure pursuant to law. A second trial judge refused to enforce the order to produce. The Supreme Court ruled that the second trial judge did not violate the coordinate

15

jurisdiction rule because the first judge's order was "clearly erroneous" *and* "create[d] a manifest injustice." *Id.* at 33-34. The Court explained that the case law was "virtually unanimous" that the Mental Health Procedures Act[7] barred disclosure of a patient's records. It also concluded that the first order mandating release of mental health records in violation of law "would most certainly create a manifest injustice," *id.* at 33, because it "would have a chilling effect on mental health treatment in general" and would result in the confidential nature of the records being lost forever, even if reversed on appeal. *Id.* at 34.

Concurring in *Zane*, Justice Nigro clarified what is meant by the terms "clearly erroneous" and "manifest injustice":

> [A] judge should not label a prior order to be 'clearly erroneous' merely because he [or she] disagrees with that order, but rather, it must be virtually undisputable that the prior judge erred. Similarly, *it should not be considered a 'manifest injustice' that an erroneous prior order will merely delay correct resolution of a case, but rather, adherence to the prior order must be such that it will cause considerable substantive harm aside from delay and . . . will result in a situation that is 'plainly intolerable.'*

836 A.2d at 34-35. (Emphasis added.)

Here, the trial court relied on this exception, concluding that the prior order denying summary judgment was "clearly erroneous." (Trial Ct. Op., 8/26/15, at 13.) Assuming for the sake of argument that Judge Proud's orders denying summary

---

[7] Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. §§7101-7114.

judgment and denying reconsideration were clearly erroneous, that is only half of the equation under *Zane*. *Zane* requires us to also determine whether adherence to Judge Proud's orders denying summary judgment would create "a manifest injustice," i.e. would cause "considerable substantive harm aside from delay and . . . will result in a situation that is 'plainly intolerable.'" *See Zane*, 836 A.2d at 34-35.

Here, the trial court determined that forcing CEC to continue to trial on Bates' claims "would create a manifest injustice and would allow the action to proceed in the face of almost certain reversal on appellate review." (Trial Ct. Op., 8/26/15, at 13.) The trial court stated that "it is clear that [Bates] could not succeed on her claims at trial." (*Id.*) CEC agrees with the trial court. However, both the trial court and CEC have failed to distinguish the facts of this case from the facts of *Goldey* and the clear directive of *Zane,* which requires plainly intolerable harm, aside from delay.

In *Goldey*, the Supreme Court determined that a second trial judge erred by granting summary judgment after denial by a prior judge. *Id.* at 267. The second judge concluded that the law was clear that the plaintiff's claims were barred by a release and, like the trial court in this case, reasoned that "it would be a waste of resources to conduct a trial since the defendant would be entitled to a directed verdict." *Id*. Our Supreme Court rejected that reasoning, explaining, "[t]hat says nothing that is not true in every case where summary judgment has once been denied and a second judge has a different view." *Id.* Both *Goldey* and *Zane* instruct that the manifest injustice must be something more than mere delay from having to go to trial; it must be "plainly intolerable." *See Zane,* 836 A.2d at 30.

17

In *Zane*, the "manifest injustice" was damage to the defendant and a third party by release of a patient's mental health records. In contrast, in *Goldey* and in this case, the "manifest injustice" was solely the waste of resources in having to go to trial where the defendant would be entitled to a directed verdict. Here, the trial court stated that "[f]orcing CEC to continue to trial on these claims would create a manifest injustice and would allow the action to proceed in the face of almost certain reversal on appellate review." (Trial Ct. Op., 8/26/15, at 13.) However, under *Zane* and *Goldey,* being forced to go to trial is insufficient to constitute "manifest injustice." Therefore, the trial court's order granting summary judgment to CEC does not come within any exception to the coordinate jurisdiction rule.

For the foregoing reasons, we conclude that the trial court's entry of summary judgment after Judge Proud's prior order denying summary judgment violated the coordinate jurisdiction rule and was, therefore, an abuse of discretion.

Because of our decision to vacate the trial court's grant of summary judgment on the basis of the coordinate jurisdiction rule, we need not, and do not, decide the question of whether a genuine issue of material fact existed to preclude summary judgment.

### Effect of the Commonwealth Court decision in Bates' Unemployment Compensation Case

In support of its argument made to this Court, as well as the trial court, that summary judgment was proper because no fact issues exist, CEC relied in part on the fact that this court previously considered and rejected Bates' claims in her appeal from the denial of unemployment compensation benefits. CEC's argument in this

18

appeal has been rendered moot by our decision to vacate the grant of summary judgment. We also note that, despite CEC's attempt to have the trial court rely on the unemployment compensation case, the trial court's opinion in support of its grant of summary judgment did not mention the unemployment compensation case. However, because CEC may raise this issue again on remand, we address it here.

In *Bates v. Unemployment Compensation Board of Review*, (Pa. Cmwlth. No. 1679 C.D. 2012, filed June 25, 2013), this Court issued a memorandum opinion and order, affirming the denial of unemployment compensation benefits because Bates was properly discharged for the willful misconduct of abandoning her position when she left the control room. CEC argues that, based on this court's decision in that case, "it is clear that CEC had grounds to immediately terminate Bates pursuant to the CBA" and, therefore, that Bates failed to raise an issue of material fact. (CEC's Br. at 28.)

Section 509 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §829, states unequivocally that "[n]o finding of fact or law, judgment, conclusion or final order made with respect to a claim for unemployment compensation under this act may be deemed to be conclusive or binding in any separate or subsequent action or proceeding in another forum." *See also Rue v. K-Mart Corporation,* 713 A.2d 82, 86-87 (Pa. 1998). Thus, the findings against Bates in her unemployment compensation case have no bearing on the remanded case before the trial court.

19

For the foregoing reasons, because the trial court's August 26, 2015 order was contrary to the coordinate jurisdiction rule and did not come within an exception to that rule, the order is hereby vacated, and this case is remanded for trial.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anna J. Bates, | : | |
| | : | No. 339 C.D. 2016 |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Delaware County Prison | : | |
| Employees' Independent Union, | : | |
| and Community Education Centers, | : | |
| Inc. (a/k/a George W. Hill | : | |
| Correctional Facility) | : | |
| | : | |
| v. | : | |
| | : | |
| Community Education Centers, Inc. | : | |
| (a/k/a George W. Hill Correctional | : | |
| Facility) | : | |
| | : | |
| v. | : | |
| | : | |
| The Security, Police, and Fire | : | |
| Professionals of America, Local 500 | : | |

O R D E R

AND NOW, this 16th day of November, 2016, the order of the Court of Common Pleas of Delaware County dated August 26, 2015, is vacated and this case is remanded for trial.

Jurisdiction relinquished.

_____
ROCHELLE S. FRIEDMAN, Senior Judge