# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Hill, : 
              Appellant : 
               : 
         v. : No. 262 C.D. 2019
            : Submitted: March 24, 2020
Pennsylvania Department of : 
General Services, Pennsylvania : 
Department of Corrections, and : 
Philadelphia CCC #4 : 

**BEFORE:  HONORABLE P. KEVIN BROBSON, Judge**
               **HONORABLE MICHAEL H. WOJCIK, Judge (P.)**
               **HONORABLE CHRISTINE FIZZANO CANNON, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED:  May 13, 2020**

Appellant-plaintiff James Hill (Hill) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), dated December 10, 2018. Following a bench trial, the trial court entered a final judgment on the compulsory nonsuit in favor of Appellees-defendants Pennsylvania Department of General Services (DGS), Pennsylvania Department of Corrections (DOC), and Philadelphia Community Corrections Center Number Four (CCC-4) (hereinafter, Commonwealth Defendants) and denied Hill's post-trial motion for relief in the nature of a request for a new trial. For the reasons that follow, we affirm the trial court's decision.

## I.     BACKGROUND

Hill, a 60-year-old man on parole residing at CCC-4, went to the medicine room at CCC-4 on the morning of July 13, 2014, to receive his daily medication. When he sat down in a chair, the chair collapsed, causing him to fall to the floor and injure his neck and back.  The guard in the room helped him to his feet and assisted him in writing a report about the accident.  The next day, Hill went to the Hahnemann Hospital Emergency Room where the doctor diagnosed him with a bruised back. Over the course of several months, Hill received physical therapy and shots for pain management related to his injuries.  On June 22, 2016, Hill filed this lawsuit, asserting claims of negligence and seeking damages.

### A. Procedural History

Initially, Hill named Able Realty Company (Able Realty) and the City of Philadelphia (City) as defendants.  The City answered the complaint in August 2016. Hill filed a motion for leave of court to amend his complaint in January 2017, which the trial court granted.  Thereafter, on February 22, 2017, Hill filed an amended complaint, through which he added the Commonwealth of Pennsylvania (Commonwealth) and Commonwealth Defendants as defendants.  The City filed an answer and new matter to the amended complaint, and Hill replied to the City's new matter in March 2017.   The Commonwealth and Commonwealth Defendants answered the amended complaint in April 2017, and Able Realty answered the amended complaint in May 2017.

In June 2017, the Commonwealth and Commonwealth Defendants filed a motion for judgment on the pleadings, arguing that Hill's claims against them were barred by the applicable two-year statute of limitations.  Hill countered that the statute of limitations was tolled because the Commonwealth and Commonwealth

2

Defendants fraudulently concealed the identity of the owner of the chair. By order dated June 13, 2017, issued without an accompanying opinion, the trial court, through the Honorable Daniel Anders, denied the motion for judgment on the pleadings. Hill agreed to dismiss the City from the case in November 2017 and Able Realty from the case in February 2018.

Following the completion of discovery, the Commonwealth and Commonwealth Defendants filed a motion for summary judgment in March 2018, arguing that: (1) the claims against the Commonwealth itself were barred by the doctrine of sovereign immunity; and (2) the claims against Commonwealth Defendants were barred by the applicable statute of limitations. Hill again countered that the statute of limitations was tolled because Commonwealth Defendants fraudulently concealed the chair's owner. By order dated April 6, 2018, again issued without an accompanying opinion, Judge Anders granted summary judgment to the Commonwealth itself on the grounds of sovereign immunity but denied Commonwealth Defendants' motion for summary judgment on the statute of limitations argument. The case proceeded to a bench trial on June 13, 2018, before the Honorable Marlene Lachman.

**B. Bench Trial**

*1. Hill's Motion in Limine*

At the outset of the bench trial, the trial court considered a motion in limine filed by Hill, wherein he sought to preclude anticipated testimony of a corporate designee of Able Realty as it related to Commonwealth Defendants' statute of limitations defense and Hill's allegations that Commonwealth Defendants engaged in fraud or concealment as to the ownership of the chair at issue. (Reproduced

3

Record (R.R.) at 234A-236A; Trial Transcript for June 13, 2018, at 5-8.)[1] Hill's attorney argued that the motion in limine should be granted because Judge Anders previously addressed Commonwealth Defendants' sovereign immunity defense when he denied their motions for judgment on the pleadings and summary judgment. (R.R. at 235A.) Hill's attorney submitted that allowing Commonwealth Defendants to argue sovereign immunity again at the trial would violate the coordinate jurisdiction rule. Commonwealth Defendants argued that the witness was necessary to counter Hill's argument that the statute of limitations was tolled. (R.R. at 235A, 236A.)

Judge Lachman denied Hill's motion in limine. (R.R. at 240A.) In so doing, Judge Lachman noted that Judge Anders' orders denying the motion for judgment on the pleadings and motion for summary judgment were not accompanied by opinions. (R.R. at 236A.) Without the written opinions, Judge Lachman could not divine Judge Anders' reasoning for the decisions. She concluded that, notwithstanding the orders of Judge Anders, the statute of limitations issue was still a matter to be considered at the trial. (R.R. at 236A, 237A.)

## 2. *Hill's Case-in-Chief*

Hill testified on his own behalf and entered the deposition testimony of Rebecca Norris (Norris), the CCC-4 Center Director, and Victoria Pastella (Pastella), the corporate designee for Able Realty.

Hill testified that, in May 2014, he resided at CCC-4, which was a center for people who were paroled from prison, where he stayed for about nine months. Hill stated that he was unsure who was "running" the CCC-4 center, but he knew that

---

[1] The Court notes that the reproduced record omitted pages 5 to 8 of the Trial Transcript for June 13, 2018; accordingly, the Court is relying upon the Trial Transcript's pages obtained from the original record in the case.

4

"Ms. Norris" was the head of the counselors. On the morning of July 13, 2014, Hill went to get his medication in the medicine room at CCC-4 and sat down in a chair while waiting for his medication. (R.R. at 244A.) When he sat down, the legs of the chair went underneath it, and he fell to the ground, hitting the whole right side of his body. The guard in the room helped him to his feet and assisted in writing a report about the accident.

Hill's attorney read into the record an excerpt from the deposition testimony of Rebecca Norris, wherein she testified: (1) in July 2014 she was working at CCC-4 as the Center Director; (2) her duties included ensuring the safety of the people who were at CCC-4; (3) that everything in the building was owned by DOC; and (4) she had the responsibility to make sure the chairs in CCC-4 were safe. (R.R. at 250A.) She also testified that, pursuant to the policies and procedures at CCC-4, she would receive written reports from staff detailing accidents or incidents at CCC-4. During the reading of Norris' deposition testimony, the trial court admitted into evidence exhibit P-1, a Commutative Adjustment Report, which noted the occurrence of the July 13, 2014 accident. (R.R. at 251A.)

Pastella, as corporate designee for Able Realty, testified that Able Realty was the owner of the building where Hill's July 2014 accident occurred. (R.R. at 254A.) She had no knowledge of how Hill's accident occurred or the injuries that he sustained, but she was served with a copy of Hill's original complaint in July 2016. Soon after receiving the complaint, she telephoned Hill's attorney's office to inform the attorney that Able Realty was not responsible for the chair in CCC-4. (R.R. at 253A.) She stated that she did not indicate who was responsible for the chair at that time. On January 16, 2017, she faxed a letter to Hill's attorney, indicating that Able Realty leased the space to CCC-4, and CCC-4 was responsible

5

for the chairs within the building. The trial court admitted into evidence the January 16, 2017 letter as exhibit P-2. On cross-examination, Pastella reiterated that she contacted Hill's attorney within a week of service of the complaint on Able Realty. Commonwealth Defendants' attorney marked for identification an affidavit of service of the complaint on Able Realty on July 6, 2016, as defense exhibit D-1. (R.R. at 255A.) On redirect examination, Pastella acknowledged that Able Realty never filed an answer to the original complaint.

### 3. Motion for Compulsory Nonsuit

After Hill rested his case, Commonwealth Defendants' attorney argued that Commonwealth Defendants were entitled to nonsuit because Hill did not add them as defendants until February 22, 2017, which was seven months after the statute of limitations expired on July 13, 2016. Commonwealth Defendants' attorney noted that during Hill's case-in-chief, there was no evidence whatsoever that Commonwealth Defendants committed any acts that would have deterred Hill from determining who owned the chair. Furthermore, Commonwealth Defendants' attorney noted that Pastella testified that seven days before the relevant statute of limitations expired, she contacted Hill's attorney's office to inform the attorney that Able Realty did not own the chair in question. Finally, Commonwealth Defendants' attorney argued that Hill's attorney did not do any level of investigation into who owned the chair until Pastella provided a second notice to him on January 13, 2017. (R.R. at 255A.)

Judge Lachman, after a brief recess, framed the issue before her as whether she was bound by Judge Anders' denials of the motion for judgment on the pleadings and the motion for summary judgment. (R.R. at 261A.) Judge Lachman found that: (1) the date of the accident was July 13, 2014; (2) Hill filed his complaint

6

against Able Realty and the City on June 22, 2016; (3) the complaint was served on Able Realty on July 6, 2016; (4) Hill filed the amended complaint on February 22, 2017, which included the Commonwealth, DGS, DOC, and CCC-4 as defendants; (5) Commonwealth Defendants filed their motion for judgment on the pleadings on June 13, 2017; (6) Judge Anders denied the Commonwealth's motion for judgment on the pleadings on August 1, 2017; (7) Commonwealth Defendants filed their motion for summary judgment on March 1, 2018; and (8) Judge Anders granted the Commonwealth's motion for summary judgment, but denied Commonwealth Defendants' motion for summary judgment on April 6, 2018. (R.R. at 262A.) Judge Lachman found that the addition of Commonwealth Defendants as defendants occurred more than two years after the July 13, 2014 accident.

Judge Lachman did not find any circumstances where Commonwealth Defendants committed an affirmative independent act of concealment upon which a plaintiff may rely to toll the statute of limitations. (R.R. at 263A.) Judge Lachman found Pastella to be a credible witness, and her statement denying ownership was not an affirmative effort to divert, mislead, or prevent discovery of the correct owner. Judge Lachman concluded that Hill "did not prove fraudulent concealment by clear, precise, and convincing evidence[,] and[,] therefore[,] a nonsuit is entered in favor of [Commonwealth Defendants] and against [Hill] on [Hill's] claims against . . . [DGS, DOC], and CCC-4." (R.R. at 263A-64A.) For these reasons, Judge Lachman granted Commonwealth Defendants' motion for nonsuit.

### C. Hill's Post-Trial Motion

Hill filed a motion for post-trial relief in the nature of a motion for a new trial. (Trial Court Docket Entry 59.) Hill claimed that Judge Lachman committed a reversible error when she disregarded Judge Anders' prior orders denying

7

Commonwealth Defendants' motions for judgment on the pleadings and summary judgment on the statute of limitations issue. (Original Record (O.R.), Motion for a New Trial, ¶¶ 3-5.) Hill submitted that Judge Lachman committed a reversible error by basing her decision to allow the statute of limitations defense at trial on Judge Anders' failure to write an opinion when he denied Commonwealth Defendants' motions for judgment on the pleadings and summary judgment. (*Id.* ¶¶ 5, 6.) Finally, Hill argued that the nonsuit entered by Judge Lachman was contrary to the weight of the case law and precedent. (*Id.* ¶ 7.)

Judge Lachman denied Hill's motion for post-trial relief. In her decision, Judge Lachman stated that the "only issue raised in [Hill's] post-trial motions was [whether] the coordinate jurisdiction rule deprived the trial court of the power and authority to rule on the statute of limitations issue, because Judge Anders had denied motions for judgment on the pleadings and summary judgment on that issue." (R.R. at 4A.) Judge Lachman concluded that the "coordinate jurisdiction rule did not bar [the trial court] from entertaining and granting [Commonwealth] Defendants' motion for a compulsory nonsuit . . . [and] [b]ecause the only issue raised in [Hill's] post-trial motion was the bar of the coordinate jurisdiction rule, the [trial c]ourt denies his post-trial motion." (R.R. at 9A.)

Judge Lachman included a lengthy footnote to her opinion, which provided:

> Paragraph 7 of the post-trial motion stated, "The non-suit entered by Judge Lachman was contrary to the weight of the case law and precedence [sic] in the Commonwealth of Pennsylvania." The Court reads this claim as being part of [Hill's] coordinate jurisdiction argument. If it is an attempt to substantively challenge the entry of the nonsuit, however, it is waived for two reasons. By not identifying specific reasons why the nonsuit is against the weight of the law, the claim is mere boilerplate that fails to preserve any issue for review. . . .

8

> The weight claim is also waived because [Hill's] post-trial brief does not develop any argument on that claim and merely repeats the same sentence quoted above. It does not cite to any evidence in the record or to [the] case or other authority.

(R.R. at 10A (citations omitted).) This appeal followed.[2]

## II. DISCUSSION

On appeal, Hill argues that Judge Lachman committed an error of law and abused her discretion when: (1) she denied him a new trial; and (2) entered judgment in favor of Commonwealth Defendants after granting them a compulsory nonsuit at the bench trial. Hill claims that Judge Lachman violated the coordinate jurisdiction rule by granting Commonwealth Defendants' nonsuit based on their statute of limitations defense after Judge Anders denied, without written opinions, the same defense at the judgment on the pleadings and summary judgment stages of the case. Hill submits that because Commonwealth Defendants did not argue a change in the law or provide new evidence, Judge Lachman improperly granted the compulsory nonsuit and denied him a new trial. Commonwealth Defendants argue that Hill, by not properly addressing it in his post-trial motion, waived the issue of whether Judge Lachman erred or abused her discretion when she granted Commonwealth Defendants' motion for compulsory nonsuit.

An appellate court must follow a two-step analysis for review of a trial court's determination to grant or deny a new trial. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000). The appellate court must first examine the trial court's decision to determine if a mistake occurred. *Id.* Then, if a mistake occurred, the appellate court must determine whether the trial court abused its discretion in

_____

[2] Following Hill's appeal, Judge Lachman submitted her December 10, 2018 opinion denying Hill's motion for post-trial relief as her opinion pursuant to Pa. R.A.P. 1925(a).

9

ruling on the request for a new trial. *Id*. at 1123. We begin our review by determining if the trial court, through Judge Lachman, made a mistake when she concluded at trial that the coordinate jurisdiction rule did not apply to Hill's claims.

## A. Coordinate Jurisdiction Rule

The coordinate jurisdiction rule is one of the distinct rules encompassed within the "law of the case" doctrine.[3] *Zane*, 836 A.2d at 29. "[U]nder the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *City of Phila. v. Galdo*, 181 A.3d 1289, 1291 n.1 (Pa. Cmwlth. 2018) (quoting *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 425 (Pa. 1997)), *aff'd*, 217 A.3d 811 (Pa. 2019). The rule "is premised on the sound jurisprudential policy of fostering finality in pre-trial proceedings, thereby promoting judicial economy and efficiency." *Riccio*, 705 A.2d at 425. It is applicable in both civil and criminal cases. *Id*. While the coordinate jurisdiction rule "prohibits a judge from overruling the decision of another judge of the same court[] under most circumstances," there are "situations when the rule does not apply." *Ryan v. Berman*, 813 A.2d 792, 794 (Pa. 2002).

"At the outset, it is important to note that the fact that the [Judge's] orders were entered without opinions does not make a difference in our analysis of the

---

[3] In *Zane v. Friends Hospital*, 836 A.2d 25 (Pa. 2003), our Supreme Court explained:

> Among rules that comprise the law of the case doctrine are that: "(1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court."

*Zane*, 836 A.2d at 29 n.6 (quoting *Cmwlth. v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995)).

coordinate jurisdiction rule." *Bates v. Del. Cty. Prison Emps.' Indep. Union*, 150 A.3d 121, 126 (Pa. Cmwlth. 2016). The Pennsylvania Supreme Court has stated that "opinions explaining the denial of pretrial motions are not required by the rules of procedure" and "[t]he presence or absence of an opinion in support of the initial ruling is not controlling." *Goldey v. Trs. of the Univ. of Pa.*, 675 A.2d 264, 266-67 (Pa. 1996). While a written opinion is helpful and provides a record of the basis for the decision at issue, the absence of a written opinion alone is not dispositive for purposes of determining applicability of the coordinate jurisdiction rule.

"The coordinate jurisdiction rule does not apply where the motions are of a different type[, and it] does not bar a judge on summary judgment from overruling another judge's decision on preliminary objections or judgment on the pleadings, even on an identical legal issue." *City of Phila.*, 181 A.3d at 1291 n.1. The Pennsylvania Supreme Court has explained that "[a]ny party may seek judgment on the pleadings or summary judgment . . . [and] [w]hile these motions may supplement each other, and be made at the same time, there is a distinct difference between them, and each should be distinctly and procedurally named, pleaded, and argued in its own right." *Bensalem Twp. Sch. Dist. v. Cmwlth.*, 544 A.2d 1318, 1321 (Pa. 1988). A "motion for judgment on the pleadings can be used as a motion to test whether such a cause of action as pleaded exists at law, and in that way 'is in the nature of a demurrer.'" *Id.* (quoting *Bata v. Central-Penn Nat'l Bank of Phila.*, 224 A.2d 174, 178 (Pa. 1966), *cert. denied*, 386 U.S. 1007 (1967)). The motion "is limited to the pleadings themselves and no factual materials outside the pleadings may be considered." *Id.* (quoting *Goodrich Amran*, 2d § 1035:1, p. 423).

The Supreme Court further explained that "[a] motion for summary judgment . . . is radically different because the issue is whether the moving party has

11

*established*, by virtue of a developed pretrial record, the cause of action or defense he has pleaded[] . . . ." *Id.* at 1321 (emphasis in original). The motion for summary judgment is:

> [D]esigned to supplement the motion for judgment on the pleadings to provide for an equivalent summary disposition of the case where the pleadings may be sufficient, on their face, to withstand a demurrer but where, in actuality, there is no genuine issue of fact and this can be conclusively shown through depositions, answers to interrogatories, admissions or affidavits.

*Id.* (quoting *Goodrich Amran*, 2d § 1035(a):3, p. 427).

Similarly, a motion for summary judgment differs from a motion for compulsory nonsuit. In *Hunter v. City of Philadelphia*, 80 A.3d 533 (Pa. Cmwlth. 2013), the plaintiff argued that the trial court's denial of the defendant's motion for summary judgment precluded the trial court's later grant of a compulsory nonsuit in the City's favor. We reasoned:

> [T]he motions for summary judgment and for entry of a non-suit differ not only in kind but also in the operative facts. Summary judgment is appropriately granted where the record shows that there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law, and the right to such judgment is clear and free from doubt. Entry of non-suit is proper only if the fact finder, viewing all the evidence in favor of the burdened party, could not reasonably conclude the essential elements of the cause of action were established and can only be granted in cases where it is clear a cause of action was not established.

*Hunter*, 80 A.3d at 537 (citations omitted). We concluded in *Hunter* that, "[b]ecause the City's motion for summary judgment and request for non-suit occurred during different procedural phases of the case, with the latter following presentation of the

12

[p]laintiff's case in chief . . . the trial court . . . did not violate the coordinate jurisdiction rule by granting the City's request for non-suit." *Id*. at 538.

Conversely, under the coordinate jurisdiction rule "a later motion should not be entertained or granted when a motion *of the same kind* has previously been denied." *Goldey*, 675 A.2d at 267 (emphasis in original). Two exceptions exist to the coordinate jurisdiction rule: (1) "when there has been a change in the controlling law or where there was a substantial change in facts or evidence[,]" and (2) "the prior holding was clearly erroneous and would create a manifest injustice if followed." *Zane*, 836 A.2d at 29 (quoting *Starr*, 664 A.2d at 1331).

We reviewed the proper application of the coordinate jurisdiction rule in *Bates*. The plaintiff in *Bates* was an employee of a county correctional facility until she was terminated for leaving her duty post. The plaintiff sued her union and the county correctional facility (employer-defendant) for claims related to her allegedly wrongful termination, and, during the course of the litigation, the employer-defendant filed the following motions, all of which the trial court denied: (1) preliminary objections; (2) a motion for summary judgment; and (3) a motion for reconsideration of summary judgment. *Bates*, 150 A.3d at 123-24. The case was transferred to another judge who set a deadline for discovery and the filing of dispositive motions. Following the close of discovery, the employer-defendant filed a second motion for summary judgment. The plaintiff opposed the employer-defendant's second motion for summary judgment on the basis that it violated the coordinate jurisdiction rule. The plaintiff presented the same arguments as she did in the first motion for summary judgment. The second judge ultimately granted the second motion for summary judgment in favor of the employer-defendant.

13

We reviewed whether there was a substantial change in the controlling law or whether there was a substantial change in the facts or evidence between the first and second motions. The employer-defendant argued that because the second motion for summary judgment was filed after discovery closed, the trial court was able to consider the motion on a full and final record. We disagreed and concluded that, because there was not "new evidence" that warranted the second judge's consideration of the motion, the second judge erred in allowing the employer-defendant to re-litigate its immunity defense through the second motion for summary judgment. *Bates*, 150 A.3d at 128.

We then considered whether the first ruling was clearly erroneous and would create a manifest injustice if allowed to stand. We reasoned:

> [A] judge should not label a prior order to be "clearly erroneous" merely because he [or she] disagrees with that order, but rather, it must be virtually undisputable that the prior judge erred. Similarly, it should not be considered a "manifest injustice" that an erroneous prior order will merely delay correct resolution of a case, but rather, adherence to the prior order must be such that it will cause considerable substantive harm aside from delay and . . . will result in a situation that is "plainly intolerable."

*Id.* (quoting *Zane*, 836 A.2d at 34-35). We recognized that neither the second judge nor the employer-defendant provided a reason beyond "delay from having to go to trial" that reached the threshold of a manifest injustice if the initial decision on the first motion for summary judgment was allowed to stand. *Id.* at 130. We concluded that the entry of summary judgment after denial of the first motion for summary judgment violated the coordinate jurisdiction rule and was, therefore, an abuse of discretion. *Id.* at 130-31. The facts of Hill's case, however, are different from the plaintiff in *Bates*.

14

This matter involves a factual situation where the motion for judgment on the pleadings, the motion for summary judgment, and the motion for compulsory nonsuit occurred at various stages of litigation—pretrial and trial. Commonwealth Defendants properly utilized the relevant procedural rules to argue its statute of limitations defense throughout the various stages of the litigation. This matter does not involve two judges of the same court ruling on the same procedural motion, and that distinguishes this case from our decision in *Bates*, where the coordinate jurisdiction rule clearly applied. Here, we conclude that the coordinate jurisdiction rule does not apply and, consequently, that Judge Lachman did not commit an error of law when she reached that same conclusion in granting Commonwealth Defendants' motion for compulsory nonsuit and denying Hill a new trial.

## B. Waiver

Judge Lachman found that Hill waived his challenge to entry of the nonsuit decision for Commonwealth Defendants because his claim is "mere boilerplate that fails to preserve any issue for review." (R.R. at 10A; O.R., Plaintiff's Motion for a New Trial, at 1-3; Plaintiff's Supporting Brief at 1-5.) We agree. As Judge Lachman noted, in *Browne v. Department of Transportation*, 843 A.2d 429, 434-435 (Pa. Cmwlth.), *appeal denied*, 863 A.2d 1149 (Pa. 2004), we held that a one-paragraph argument in a party's post-trial motion brief that cursorily discusses an issue without analysis of relevant authority does not satisfy the requirement of briefing and arguing an issue as envisioned by Pa. R.C.P. No. 227.1, resulting in waiver of the issue.

15

### III. CONCLUSION

Accordingly, we affirm the trial court's decision and order, denying Hill's motion for a new trial.

 

 

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Hill,                   :
             Appellant    :
                   :
         v.            :   No. 262 C.D. 2019
                   :
Pennsylvania Department of   :
General Services, Pennsylvania  :
Department of Corrections, and  :
Philadelphia CCC #4        :

# **O R D E R**

AND NOW, this 13th day of May, 2020, the order of the Court of Common Pleas of Philadelphia County, denying the appellant's motion for post-trial relief in the nature of a motion for a new trial is AFFIRMED.

 

P. KEVIN BROBSON, Judge