**[J-47-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

IVY HILL CONGREGATION OF
JEHOVAH'S WITNESSES,

               Appellant

               v.

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF HUMAN SERVICES,

               Appellee

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 65 MAP 2022

Appeal from the Order of the
Commonwealth Court at No. 316
MD 2020 dated May 10, 2022.

ARGUED:  September 14, 2023

**OPINION**

**CHIEF JUSTICE TODD**               **DECIDED:  February 13, 2024**

In this direct appeal, we consider whether the Commonwealth Court, in dismissing a petition filed by Ivy Hill Congregation of Jehovah's Witnesses (hereinafter, "Appellant") under the Declaratory Judgments Act ("DJA"),[1] violated the coordinate jurisdiction rule. For the following reasons, we hold that it did, and, accordingly, we vacate the Commonwealth Court's order and remand this matter to that court for further proceedings consistent with this opinion.

Appellant is a congregation of approximately 140 individuals in Philadelphia, Pennsylvania, who follow the tenets of the Jehovah's Witnesses religion.  Every Jehovah's Witnesses congregation is led by a body of elders, which consists of a group of five to seven volunteers.  The elders are authorized to hear and respond to a

---

[1] 42 Pa.C.S. §§ 7531-7541.

congregant's confession of sin, and, under their beliefs, are obliged to maintain the confidentiality of confessions. According to Appellant, its elders may receive confessions involving child abuse, which would implicate the mandatory reporting requirements of the Child Protective Services Law ("CPSL").[2]

Specifically, the CPSL identifies certain individuals who are deemed to be "[m]andated reporters." 23 Pa.C.S. § 6311(a). Mandated reporters are required to make a report of suspected child abuse to the Commonwealth's Department of Human Services ("DHS") if they have "reasonable cause" to suspect that a child has been a victim of abuse. *Id.* In addition to doctors and school employees, the list of mandated reporters includes "[a] clergyman, priest, rabbi, minister, Christian Science practitioner, religious healer or spiritual leader of any regularly established church or other religious organization." *Id.* § 6311(a)(6). Under Section 6319 of the CPSL, mandated reporters who fail to report a case of suspected child abuse are subject to criminal penalties. *Id.* § 6319.

Further, Section 6311.1(a) of the CPSL specifies that otherwise-privileged communications between a mandated reporter and a patient or client of the mandated reporter are not privileged if they involve child abuse, and a mandated reporter is not relieved of the duty to make a report of suspected child abuse. *Id.* § 6311.1(a). However, Section 6311.1(b), which often is referred to as the "clergyman privilege," specifies that "[c]onfidential communications made to a member of the clergy" are protected pursuant to Section 5943 of the Judicial Code, which provides:

> No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers, who while in the course of his duties has acquired information

---

[2] 23 Pa.C.S. §§ 6301-6388.

from any person secretly and in confidence shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit.

42 Pa.C.S. § 5943.

On May 20, 2020, Appellant filed in the Commonwealth Court's original jurisdiction a "Petition for Review in the Nature of a Complaint for Declaratory Relief" (hereinafter, "Petition") against DHS, alleging that uncertainty as to whether its elders fall within the class of individuals covered by the clergyman privilege negatively impacts its ability to practice the Jehovah's Witnesses faith.[3]  Accordingly, in Count I of its Petition, Appellant sought a declaration that its elders are entitled to protection under Section 6311.1(b) of the CPSL and Section 5943 of the Judicial Code because they are ministers of the gospel of a regularly established church, who are neither self-ordained, nor members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers.  In Count II of its Petition, Appellant argued that, in the event the court determined that the clergymen privilege does not apply to its elders, the court should declare Section 5943 unconstitutional, and sever the offending portion of the statute.

On May 22, 2020, Appellant filed an Application for Summary Relief, claiming the case presented a pure question of law as to whether the clergyman privilege applies to its elders, and that, to the extent the case implicates issues of fact, such facts are not the proper subject of dispute because they relate to the elders' ecclesiastic functions of the Jehovah's Witnesses faith.

On July 31, 2020, DHS filed preliminary objections to Appellant's Petition, asserting:  (1) the Petition should be dismissed because Appellant lacked standing, in

---

[3] Appellant asserts that its concerns arose after it learned of a criminal complaint filed against a bishop in the Amish community of Lancaster County, which alleged that the bishop's failure to report a confession of child abuse by a member of the Amish community constituted a violation of Section 6319 of the CPSL.  Appellant's Brief at 32.

that it failed to allege it has been aggrieved or that there is an actual controversy between the parties; (2) the Petition should be dismissed because Appellant failed to join indispensable parties, including law enforcement officials such as the Attorney General, who are responsible for investigating and prosecuting individuals who fail to report; (3) Count I of the Petition should be dismissed because Appellant failed to exhaust its administrative remedies; (4) Count I of the Petition should be dismissed because the requested relief will not terminate the alleged uncertainty regarding future enforcement actions;[4] and (5) Count II of the Petition should be dismissed because it lacks merit.[5]

With respect to Appellant's Application for Summary Relief, DHS maintained that relief should be denied because: (1) although DHS receives reports of child abuse and maintains a report database, it does not investigate the reports or enforce the criminal statutes, and, thus, Appellant does not have a clear right to judgment against DHS; (2) there exists a genuine issue of material fact concerning the role of Appellant's elders; and (3) declaring that Appellant's elders are entitled to invoke the clergyman privilege would equate to an improper adjudication of the validity of a defense to a potential future lawsuit.

Following oral argument, the Commonwealth Court, in a unanimous, unpublished *en banc* memorandum decision authored by then- President Judge, now-Justice Brobson, overruled DHS's preliminary objections, but denied Appellant's application for summary relief. *See Ivy Hill Congregation of Jehovah's Witnesses v. Commonwealth of Pennsylvania, Dep't of Human Services*, 2021 WL 2472274 (Pa. Cmwlth. filed June 17,

---

[4] The DJA provides that a court may refuse to enter a declaratory judgment or decree where such judgment or decree, if entered, "would not terminate the uncertainty or controversy giving rise to the proceeding." 42 Pa.C.S. § 7537.

[5] Parties may raise questions regarding standing, ripeness, and the political question doctrine, all of which "give body to the general notions of case or controversy and justiciability," by filing preliminary objections to a petition for review filed in the original jurisdiction of the Commonwealth Court. *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 916-17 (Pa. 2013).

2021) (*en banc*) ("*Ivy Hill I*").[6]  After setting forth the relevant language of the CPSL and Section 5943 of the Judicial Code, the court addressed DHS's assertion that Appellant lacked standing.

The Commonwealth Court recognized that, under Pennsylvania law, "an association has standing as representative of its members to bring a cause of action even in the absence of injury to itself, if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the action challenged." *Ivy Hill I*, 2021 WL 2472274, at *5 (quoting *Robinson Township*, 83 A.3d at 922).  It further observed that "existing jurisprudence permits pre-enforcement review of statutory provisions in cases in which petitioners must choose between equally unappealing options and where the third option . . . is equally undesirable." *Id.* (quoting *Robinson Township*, 83 A.3d at 924).[7]

The court determined that the interest of Appellant's elders in the outcome of the litigation "is sufficiently substantial, direct, and immediate to confer standing upon [Appellant] as their representative under *Robinson Township* and *FOAC* " because "[t]he uncertainty regarding the meaning and, alternatively, the validity of the clergyman privilege as preserved in the CPSL with respect to its coverage of the elders," leaves the elders with the "equally unappealing options" of:  (1) reporting suspected child abuse of

---

[6] In *Ivy Hill I,* the *en banc* panel of the Commonwealth Court was composed of then-President Judge, now-Justice Brobson, and Judges Cohn Jubelirer, McCullough, Covey, Wojcik, Fizzano Cannon, and Ceisler.

[7] The Commonwealth Court additionally relied on its decision in *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497 (Pa. Cmwlth. 2019) (*en banc*) ("*FOAC*"), wherein it held that individual gun owners and a political action committee had standing to challenge certain city ordinances regulating the use, possession, ownership, and transfer of firearms within the city because the plaintiffs were faced with the "equally unappealing options" of curbing their conduct to conform to the ordinance, or willfully violating the law and facing criminal prosecution.  *Id.* at 513.  On appeal, this Court affirmed the Commonwealth Court's decision. *See Firearm Owners Against Crime v. City of Harrisburg*, 261 A.3d 467 (Pa. 2021).

which they become aware through the course of a confidential communication, thereby violating their promise of confidentiality; (2) failing to report the suspected child abuse, thus risking criminal prosecution; or (3) abstaining from fully performing their ecclesiastical responsibilities as they relate to hearing confessions and providing spiritual guidance and counseling. *Id.* at *7.

The court further found that the interest of Appellant's elders is "not remote,"[8] as resolution of the matter "may affect how the elders perform their ecclesiastical functions, such as hearing confessions and providing spiritual guidance and counseling, and it will impact their reporting obligations under the CPSL." *Id.* Thus, the court concluded that pre-enforcement review was proper.

Regarding DHS's contention that Appellant's Petition should be dismissed because it failed to join indispensable parties − including law enforcement parties, such as the Attorney General, who are responsible for "investigating and prosecuting the criminal offenses arising out of the CPSL, including instances of failing to report," *id.* at *8 − the court first recognized that, pursuant to Section 7540(a) of the DJA, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." *Id.* The court noted, however, that the provision is "subject to limiting principles," and "joinder may not be required 'where the interest involved is indirect or incidental.'" *Id.* (quoting *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 582 (Pa. 2003)).

Emphasizing that Appellant sought only a declaration as to whether its elders are required to report suspected abuse to DHS under the CPSL, and that the other parties identified by DHS are not entities to whom mandated reporters are required to report, the

___

[8] It would appear that, in using the phrase "not remote," the court intended to state that Appellant's elders' interest was direct and/or immediate.

court concluded that the law enforcement agencies identified by DHS were not indispensable parties, reasoning:

> To the extent this matter implicates a law enforcement interest in whether the privilege can be invoked in a particular future enforcement action that is held by the parties DHS identifies, we conclude that interest is "indirect and incidental" to the claims and relief sought by [Appellant] relating to its elders' initial reporting obligations herein. In other words, we do not believe that the law enforcement officials identified have rights "so connected with the claims of the litigants that no relief can be granted without infringing on those rights," nor do we believe that justice cannot be done in the absence of those parties. *City of Philadelphia*, 838 A.2d at 581. To be clear, this case is not about the role of the prosecutor in charging a particular mandated reporter; rather, it is about whether the privilege preserved in the CPSL is available to [Appellant's] elders such that there may be occasions where they are not required to report instances of child abuse to DHS. Ultimately, courts, not prosecutors, decide whether a privilege attaches. We, therefore, overrule DHS's preliminary objection.

*Id.*

Next, with respect to Appellant's alleged failure to exhaust administrative remedies as to Count I, the Commonwealth Court overruled DHS's preliminary objection on the ground that, *inter alia*, DHS failed to identify a specific remedy Appellant could pursue to challenge the CPSL. *Id.* at *9 (citing *United Sportsmen of Pa. v. Pa. Game Comm'n*, 90 A.2d 1129 (Pa. Cmwlth. 2008) (overruling preliminary objection of Pennsylvania Game Commission asserting sportsmen's group's failure to exhaust available administrative remedies because, *inter alia*, the Commission did not identify a specific remedy the sportsmen's group could pursue to challenge the Commission's deer management policies and practices)).

Finally, the court addressed DHS's claims that Count I of Appellant's Petition should be dismissed because the requested relief would not terminate the alleged uncertainty regarding future enforcement actions, and Count II of the Petition should be

dismissed because it lacked merit. As to DHS's argument that a grant of relief would not terminate the alleged uncertainty because the applicability of clergyman privilege does not turn solely on the status of the individual asserting the privilege, but, rather, must be determined by a court on a case-by-case basis with consideration of the nature of the underlying communication at issue, the court held:

> Here, there is a present controversy concerning whether [Appellant's] elders fall within the group of individuals entitled to invoke the clergyman privilege under Section 5943 of the Judicial Code, such that the elders may avail themselves of the protections afforded under Section 6311.1(b)(1) of the CPSL. A declaration from this Court, on either the statutory construction grounds asserted in Count I of the Petition or the constitutional grounds asserted in Count II of the Petition, regarding whether [Appellant's] elders are so entitled, would terminate that controversy. Additionally, this uncertainty concerning the elders' "rights" or "status" under the provisions at issue is the sole uncertainty "giving rise to the [instant] proceeding." 42 Pa.C.S. §§ 7533, 7537. In other words, we agree with [Appellant] that this case pertains only to "who" – specifically, [Appellant's] elders – may assert the privilege, not "what" content may be protected. Thus, it is of no moment that application of the clergyman privilege is case-specific and dependent on the particular communication at issue, as those circumstances do not operate to foreclose an end to the present controversy, nor do they render [Appellant's] constitutional claims with respect to that controversy meritless.

*Id.* at *10. Accordingly, the court overruled DHS's final two preliminary objections.

Turning to Appellant's Application for Summary Relief, the court reiterated that the central issue in the case is whether Appellant's elders can assert the clergyman privilege, which requires a determination of whether, under Section 5943, the elders are "clergym[e]n, priest[s], rabbi[s] or minister[s] of the gospel of any regularly established church or religious organization," but are not "clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers." *Id.* at *11 (quoting 42 Pa.C.S. §

5943).  Observing that there "is no evidentiary record at this juncture concerning matters such as the doctrine and organization of [Appellant] or Jehovah's Witnesses upon which to make such a determination," the court held that Appellant's right to relief was not clear, and thus denied its Application for Summary Relief.  *Id.*  Thereafter, DHS filed an answer and new matter to Appellant's Petition, and the parties proceeded to discovery.

On September 21, 2021, Appellant filed a Motion for Summary Judgment, again requesting a declaration that its elders are entitled to invoke the clergyman privilege under 23 Pa.C.S. § 6311.1(b) and 42 Pa.C.S. § 5943, and, in the event the court determined that Section 5953 does not apply to its elders, that Section 5943 be deemed unconstitutional.  On October 29, 2021, DHS filed a brief in opposition to Appellant's Motion for Summary Judgment, asserting:  (1) DHS is not an antagonistic party to Appellant because it has not sued or threatened to sue Appellant; (2) because DHS does not investigate violations of the CPSL, it is not an appropriate defendant in the underlying action; (3) Appellant improperly seeks an advisory opinion and validation of a defense to a potential future lawsuit; and (4) Appellant's action is barred by the statute of limitations.

Appellant filed a reply brief, suggesting, *inter alia*, that DHS failed to dispute either the facts or the law as set forth in Appellant's Motion for Summary Judgment; that the Commonwealth Court previously rejected DHS's claim that it is not an antagonistic party to Appellant; and that DHS's newly asserted statute of limitations defense was both waived and without merit.  The Commonwealth Court heard oral argument on Appellant's Petition and Motion for Summary Judgment.

On May 10, 2022, in a unanimous, *en banc* unpublished memorandum decision authored by Judge Dumas, the Commonwealth Court denied Appellant's Motion for Summary Judgment and dismissed its Petition.  *Ivy Hill Congregation of Jehovah's Witnesses v. Commonwealth of Pennsylvania, Dep't of Human Services*, 2022 WL

1464353 (Pa. Cmwlth. filed May 10, 2022) (*en banc*) ("*Ivy Hill II*").[9] The court began by discussing its "jurisdiction" under the DJA, recognizing that the DJA provides courts with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Id.* at *3 (quoting 42 Pa.C.S. § 7532). The court continued: "[W]hether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction." *Id.* (quoting *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019)).

The court additionally observed:

> Courts "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding . . . ." 42 Pa.C.S. § 7537; *Dechert LLP v. Pa. Dep't of Cmty. & Econ. Dev.*, 234 A.3d 911, 916 (Pa. Cmwlth. 2020) (stating, "Declaratory relief is suitable when litigation is both imminent and inevitable and the declaration sought will practically help to end the conflict between the parties." (cleaned up)).

*Id.* Explaining that it has "construed imminent and inevitable litigation as requiring the presence of antagonistic claims," the court determined that "imminent and inevitable litigation" does not exist in the instant case because the record "does not establish that DHS opposes, has sued, or threatened to sue [Appellant]," and, indeed, DHS "cannot even initiate litigation regarding the CPSL." *Id.* at *4. In support of its determination, the court cited its decision in *Ruszin v. Dep't of Labor & Industry, Bur. of Workers' Comp.*, 675 A.2d 366, 371 (Pa. Cmwlth. 1996), in which it held that the plaintiff could not raise a claim for compensation for total hearing loss before he actually suffered total hearing loss.

---

[9] In *Ivy Hill II*, the *en banc* panel consisted of President Judge Cohn Jubelirer, and Judges McCullough, Covey, Wojcik, Ceisler, Dumas, and Wallace.

The court further concluded that a grant of declaratory relief would not terminate the controversy "because DHS does not enforce the CPSL," and "[e]ither the Commonwealth or one of its agencies tasked with enforcing the reporting privilege . . . would address whether [Appellant's] elders are 'clergymen' such that they are immune from" penalties for non-reporting. *Ivy Hill II*, 2022 WL 1464353, at *4. Moreover, the court reasoned that granting Appellant declaratory relief would not terminate the controversy because "the CPSL reporting privilege implicates the evidentiary privilege at Section 5943," which "is not based solely on the clergy's status, but [on] whether the communication was made in confidence in the context of a penitential or spiritual matter," and a court or appropriate agency still would be required to review the communication at issue to determine whether Section 5943 applies in a given instance. *Id.* (citation omitted). Thus, the court ordered that "Appellant's petition for review and motion for summary relief are dismissed for lack of jurisdiction." *Id.* at *5 (order).[10]

In its present appeal to this Court, Appellant argues that the Commonwealth Court erred in holding it did not have jurisdiction to address Appellant's Petition, and, further, that the Commonwealth Court's decision and order dismissing Appellant's Petition conflicted with its decision in *Ivy Hill I*, and, so, violated the coordinate jurisdiction rule. Appellant additionally maintains that, to the extent the lower court addressed issues relating to justiciability, including whether Appellant's claims were sufficiently antagonistic, and whether the grant of declaratory relief would terminate the controversy, it erred in concluding Appellant's claims were not justiciable. Finally, based on its assertion that the lower court did not reach the merits of Appellant's underlying claims, Appellant asks this Court to forgo remanding this case to the Commonwealth Court for

---

[10] In its opinion, the court likewise stated: "[b]ecause we dismiss [Appellant's] petition for review for lack of jurisdiction, we need not summarize the various arguments regarding the statute of limitations." *Ivy Hill II*, 2022 WL 1464353 at *3 n.6.

further proceedings, and instead issue a declaration that its elders may invoke the clergyman privilege to the mandatory reporting requirements of Section 6311 of the CPSL if they become aware of otherwise-reportable information as a result of hearing a confidential religious confession. We address these arguments *seriatim*.

Appellant first contends that the Commonwealth Court's decision reveals a fundamental misunderstanding regarding the court's jurisdiction over Appellant's Petition. Appellant emphasizes that Section 761(a) of the DJA provides that the Commonwealth Court shall have original jurisdiction of all civil actions or proceedings against the Commonwealth. Appellant points to several instances, however, where the Commonwealth Court purported to dismiss its Petition on the basis of a lack of jurisdiction. *See, e.g., Ivy Hill II*, 2022 WL 1464353, at *1 ("we dismiss [Appellant's] petition for review and motion for summary relief for lack of jurisdiction"); *id.* at *3 n.6 ("we dismiss [Appellant's] petition for review for lack of jurisdiction"); *id.* at *4 ("we agree with DHS that we may decline to exercise our jurisdiction under the DJA"); *id.* at *5 (order) (stating that "[Appellant's] petition for review and motion for summary relief are dismissed for lack of jurisdiction"). Nevertheless, Appellant observes that, notwithstanding the court's repeated references to a lack of jurisdiction, the court considered factors which pertain to justiciability, such as standing, ripeness, and mootness. Appellant's Brief at 51.

In response, DHS maintains that, despite the Commonwealth Court's statements indicating that it was dismissing Appellant's Petition and Motion for Summary Judgment for "lack of jurisdiction," it is evident from the cases cited by the court, as well as the court's overall analysis, that it dismissed Appellant's Petition on "prudential grounds," specifically, its finding of a "lack of ripeness," which, according to DHS, "was entirely appropriate because DHS does not enforce Section 6319 and so did not take a position antagonistic to [Appellant]." DHS's Brief at 14; *see also id.* at 25-29.

Jurisdiction relates solely to the competence of a particular court or administrative body to determine controversies of the general class to which the case presented for consideration belongs. *See Commonwealth v. Donahue*, 98 A.3d 1223, 1233 (Pa. 2014). In contrast to jurisdiction, standing and ripeness are questions relating to justiciability. Issues of justiciability are threshold matters generally resolved before a court addresses the merits of the parties' dispute. *Robinson Township,* 83 A.3d at 916-17.

The Commonwealth Court has original jurisdiction over any action brought against the Commonwealth government. 42 Pa.C.S. § 761(a); *see also Donahue*, 98 A.3d at 1233. The "Commonwealth government" includes departments, boards, commissions, authorities, officers, and agencies of the Commonwealth. 42 Pa.C.S. § 102; *see also Donahue*, 98 A.3d at 1233. As DHS is part of the Commonwealth government, the lower court clearly had jurisdiction over Appellant's declaratory judgment action against DHS.

Our review of the Commonwealth Court's opinion in *Ivy Hill II* suggests that, notwithstanding certain language to the contrary, the court did not dismiss Appellant's Petition for lack of jurisdiction under 42 Pa.C.S. § 761(a). Rather, despite several misstatements that it lacked jurisdiction over Appellant's Petition, the court ultimately indicated that it was "exercis[ing its] discretion to dismiss [Appellant's] petition for review and the motion for summary relief," *Ivy Hill II*, 2022 WL 1464353, at *5, because "imminent and inevitable litigation does not exist," and "the requested declaratory relief would not terminate the controversy," *id.* at *4. These factors relate to "general notions of case or controversy and justiciability," and do not involve a court's jurisdiction. *See Robinson Township*, 83 A.3d at 916-17. Accordingly, we conclude Appellant is not entitled to relief

on its claim that the Commonwealth Court improperly dismissed its Petition based on a lack of jurisdiction.[11]

Appellant next argues that the Commonwealth Court's decision in *Ivy Hill II* violated the coordinate jurisdiction and law of the case doctrines because the court disregarded its prior rulings in *Ivy Hill I* on the same issues – specifically, whether Appellant has standing, and whether granting the requested relief would terminate the controversy. Appellant further contends that, even if this Court concludes there was no violation of the coordinate jurisdiction rule, we should reverse the Commonwealth Court's decision in *Ivy Hill II* because its findings were erroneous. In this regard, Appellant asserts that, contrary to the lower court's determination, its claims against DHS are antagonistic, and, further, that a declaratory judgment will terminate the existing uncertainty as to whether Appellant's elders "are *ever* entitled to invoke the clergymen privilege." Appellant's Brief at 62 (emphasis original).

DHS responds that there was no violation of the coordinate jurisdiction rule because the Commonwealth Court's dismissal of Appellant's Petition did not conflict with its prior rulings in *Ivy Hill I*. In support of its argument, DHS posits that there was no violation because the court in *Ivy Hill II* based its decision on a lack of ripeness, a factor DHS asserts it did not raise on preliminary objections, and, therefore, was not considered by the court in *Ivy Hill I*. *See* DHS's Brief at 30 ("[N]owhere in the decision on preliminary objections will this Court find the words, 'antagonistic,' 'imminent and inevitable,' or

---

[11] The Commonwealth Court's confusing of the concepts of jurisdiction and justiciability in *Ivy Hill II* seemingly stems from its reference to language from its decision in *Brouillette*, 213 A.3d at 357 ("[W]hether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. . . . Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction."). However, for the reasons we have explained, the court's language in *Brouillette* also was imprecise. We reiterate that, while the *grant or denial* of declaratory relief is a discretionary matter, the *exercise of jurisdiction* over a declaratory judgment petition is not. *See* 42 Pa.C.S. § 761(a); *Donahue*, 98 A.3d at 1233.

'ripeness.'"). DHS further maintains that, while the court in *Ivy Hill I* considered whether a grant of declaratory relief would terminate the controversy between the parties, that is not the same issue as ripeness. *Id.* Finally, DHS asserts that the lower court did not violate the coordinate jurisdiction rule because the decisions in *Ivy Hill I* and *Ivy Hill II* addressed motions that differed in kind. *Id.* at 31.

In its reply brief, Appellant suggests that DHS uses the term "ripeness" for the first time in its brief to this Court in an attempt to "sidestep the coordinate jurisdiction rule simply by employing a different term for the same exact legal concept," namely, "whether a sufficiently concrete controversy exists between the parties to warrant declaratory relief." Appellant's Reply Brief at 5. Indeed, Appellant observes that the term "ripeness" also was not used by the court in *Ivy Hill II*, and that, even in its brief in opposition to Appellant's Motion for Summary Judgment, DHS framed its argument not in terms of "ripeness," but in terms of whether there are antagonistic claims between Appellant and DHS, such that there exists a controversy between them. *Id.*

Preliminarily, under the coordinate jurisdiction rule, "judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). Beyond promoting the goal of judicial economy, the coordinate jurisdiction rule, which we have explained falls within the more general "law of the case" doctrine, serves "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.*

Departure from the coordinate jurisdiction rule "is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter,

or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. The issue of whether a court's order or decision violates the coordinate jurisdiction rule is a question of law. Thus, our standard of review is *de novo*. *Zane v. Friends Hospital*, 836 A.2d 25, 30 n.8 (Pa. 2003).

Upon review, it is evident that the Commonwealth Court's decision below violates the coordinate jurisdiction rule. As discussed above, the court in *Ivy Hill II* concluded that DHS was not a proper defendant because the record "does not establish that DHS opposes, has sued, or threatened to sue [Appellant]"; DHS "cannot even initiate litigation regarding the CPSL"; and "imminent and inevitable litigation" requires the presence of "antagonistic claims." *Ivy Hill II,* 2022 WL 1464353, at *4.

However, in *Ivy Hill I*, in the context of addressing DHS's argument that Appellant failed to join indispensable parties, the court rejected those same concerns, emphasizing that "this case is not about the role of the prosecutor in charging a particular mandated reporter; rather, it is about whether the privilege preserved in the CPSL is available to [Appellant's] elders such that there may be occasions where they are not required to report instances of child abuse to DHS. Ultimately, courts, not prosecutors, decide whether a privilege attaches." *Ivy Hill I,* 2021 WL 2472274, at *8. Thus, the court in *Ivy Hill II* effectively overruled the *Ivy Hill I* court's determination on this issue.

Additionally, the court in *Ivy Hill II* determined that granting the requested declaratory relief would not terminate the controversy because DHS does not enforce the CPSL, and "declaratory relief binding DHS to an interpretation that [Appellant's] elders qualify as 'clergymen' would not terminate the ongoing controversy because the declaration would not bind the Commonwealth or its agencies designated to enforce the CPSL." *Ivy Hill II,* 2022 WL 1464353, at *4. Along these lines, the *Ivy Hill II* court further reasoned that, because the CPSL implicates Section 5943, and because application of

Section 5943's clergyman privilege "is not based solely on the clergy's status, but whether the communication was made in confidence in the context of a penitential or spiritual matter," it would still be necessary for a trial court or agency to review the specific communication at issue. *Id.* (quoting *Commonwealth v. Stewart*, 690 A.2d 195, 200 (Pa. 1997)).

The Commonwealth Court in *Ivy Hill I*, however, addressed these identical arguments by DHS and expressly rejected them:

> Here, there is a present controversy concerning whether [Appellant's] elders fall within the group of individuals entitled to invoke the clergyman privilege under Section 5943 of the Judicial Code, such that the elders may avail themselves of the protections afforded under Section 6311.1(b)(1) of the CPSL. A declaration from this Court, on either the statutory construction grounds asserted in Count I of the Petition or the constitutional grounds asserted in Count II of the Petition, regarding whether [Appellant's] elders are so entitled, would terminate that controversy. Additionally, this uncertainty concerning the elders' "rights" or "status" under the provisions at issue is the sole uncertainty "giving rise to the [instant] proceeding." 42 Pa. C.S. §§ 7533, 7537. In other words, we agree with [Appellant] that this case pertains only to "who"— specifically, [Appellant's] elders—may assert the privilege, not "what" content may be protected. Thus, it is of no moment that application of the clergyman privilege is case-specific and dependent on the particular communication at issue, as those circumstances do not operate to foreclose an end to the present controversy . . . .

*Ivy Hill I*, 2021 WL 2472274, at *10. Thus, again, the court in *Ivy Hill II* disregarded the ruling of the court in *Ivy Hill I* on the same issue.

We are also unpersuaded by DHS's argument that the court in *Ivy Hill II* did not violate the coordinate jurisdiction rule because it based its decision on a lack of ripeness, an issue DHS contends was not addressed by the court in *Ivy Hill I*. As Appellant observes, in its brief in opposition to Appellant's Motion for Summary Judgment, DHS never argued that Appellant should be denied relief based on a lack of ripeness, and,

indeed, the words "ripe" and "ripeness" do not appear anywhere in the *Ivy Hill II* Court's opinion. More importantly, however, as we explained in *Robinson Township*,

> [g]enerally, the doctrine of standing is an inquiry into whether the petitioner filing suit has demonstrated aggrievement, by establishing "a substantial, direct and immediate interest in the outcome of the litigation." There is considerable overlap between the doctrines of standing and ripeness, especially where the contentions regarding lack of justiciability are focused on arguments that the interest asserted by the petitioner is speculative, not concrete, or would require the court to offer an advisory opinion. In this sense, a challenge that a petitioner's interest in the outcome of the litigation is hypothetical may be pled either as determinative of standing or restyled as a ripeness concern although the allegations are essentially the same. Standing and ripeness are distinct concepts insofar as ripeness also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute. Pure questions of law . . . do not suffer generally from development defects and are particularly well suited for pre-enforcement review.

83 A.3d at 917 (citations omitted).

In the case *sub judice*, we find the doctrines of standing and ripeness are overlapping. As discussed *supra*, in its brief in opposition to Appellant's Motion for Summary Judgment, DHS argued, *inter alia*, that Appellant lacked standing because it failed to allege that there is an actual controversy between the parties, contending that DHS is not antagonistic to Appellant, and because Appellant sought an advisory opinion. Notably, DHS did not allege that the relevant facts were not sufficiently developed to permit judicial resolution. Consistent with the arguments of DHS, the court in *Ivy Hill II* held, as a matter of law, that a declaration that Appellant's elders fall within the group of individuals entitled to invoke the clergyman privilege would not terminate the existing controversy; the court did not suggest that the facts were not sufficiently developed to allow for a determination on the merits. Thus, notwithstanding DHS's attempt to

recharacterize its own challenge, as well as the basis for the court's decision in *Ivy Hill II*, as one of ripeness, it is evident that its claim is, in substance, a challenge to Appellant's standing. Accordingly, we reject DHS's argument that the court in *Ivy Hill II* did not violate the coordinate jurisdiction rule because it based its decision on the distinct basis of ripeness.

Finally, we turn to DHS's argument that the Commonwealth Court in *Ivy Hill II* did not violate the coordinate jurisdiction rule because the decisions in *Ivy Hill I* and *Ivy Hill II* addressed motions that differed in kind. Specifically, DHS notes that "the first decision resolved DHS's application on preliminary objections [to Appellant's application for summary relief]. The second decision resolved [Appellant's] second application for summary relief." DHS's Brief at 31. In support of its argument, DHS cites, *inter alia*, this Court's decisions in *Ryan v. Berman*, 813 A.2d 792 (Pa. 2002) (holding coordinate jurisdiction rule did not prevent trial judge from allowing defendants, who were doctors, to amend their pleadings to include a release that the plaintiff had entered into a separate lawsuit, despite a prior trial judge's denial of the defendants' previous request to amend their pleadings); *Riccio v. American Republic Ins. Co.*, 705 A.2d 422 (Pa. 1997) (holding that coordinate jurisdiction rule did not preclude a new judge hearing post-trial motions from ordering a new trial to correct a mistake made by the original trial judge); and *Goldey v. Trustees of Univ. of Pa.*, 813 A.2d 762 (Pa. 1996) (a motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in facts or the law clearly warrant a new look at the question).

DHS also relies on the Commonwealth Court's decisions in *Bates v. Del. Cnty. Prison Emps.' Indep. Union*, 150 A.3d 121, 127 (Pa. Cmwlth. 2016) (holding that the coordinate jurisdiction rule did not preclude a judge from granting summary judgment on issues that had previously been raised and denied by another judgment on preliminary

objections), and *Gardella v. Borough of Dunmore*, 62 A.3d 486 (Pa. Cmwlth. 2013) (holding trial court's summary judgment ruling, which was inconsistent with prior ruling on preliminary objections, did not violate collateral jurisdiction rule because, at preliminary objection stage, court was required to accept the allegations as true).

DHS concedes that "preliminary objections and a motion for summary relief could potentially address the same legal question if a defendant did not dispute any of the facts in the petition/complaint," but suggests that is not the case here. DHS's Brief at 31. Specifically, DHS suggests that, after the court in *Ivy Hill I* overruled DHS's preliminary objections, "important facts emerged," including that "there were not 'antagonistic claims' between the parties," and that these facts "became the basis for DHS's request for dismissal on ripeness grounds in response to [Appellant's] second application for summary relief." *Id.* at 32.

In response to DHS's assertion that there was no violation of the coordinate jurisdiction rule because the rulings in *Ivy Hill I* and *Ivy Hill II* were made in different procedural postures, Appellant observes that this Court specifically rejected this premise in *Rellick-Smith v. Rellick*, 261 A.3d 506 (Pa. 2021) (plurality). In *Rellick-Smith*, we considered whether a trial court's order allowing one party to file an amended answer to include the affirmative defense of the statute of limitations, when a different trial judge previously ruled that the defense was waived, violated the coordinate jurisdiction rule. In an Opinion Announcing the Judgment of the Court ("OAJC"), we rejected the appellees' argument that, because the two rulings were issued at different procedural postures – the first in response to a motion for judgment on the pleadings, and the second following discovery and prior to trial − the coordinate jurisdiction rule was not implicated.

The OAJC examined each of the cases relied on by the appellees in support of their position, including *Riccio, supra*; *Ryan*, *supra*; and *Gerrow v. John Royle & Sons*,

813 A.2d 778 (Pa. 2002) (plurality) (holding coordinate jurisdiction rule did not bar second trial judge, in ruling on a motion for summary judgment, from considering an expert report that was attached to the response to the motion, even though prior judge had denied joint motion to extend discovery deadline). We observed that, in each case, it was not the different procedural posture alone that exempted the cases from the coordinate jurisdiction rule, but, rather, the presence of one of the other exceptions to the rule − a change in the law or facts, or a determination that the earlier ruling was clearly erroneous and that following it would create a manifest injustice.

For example, in *Riccio*, we held that the first ruling was clearly erroneous and, if allowed to stand, would create an injustice. In *Gerrow*, we likewise determined that the first ruling was erroneous and unreasonable, such that it would result in a "manifest injustice" if permitted to stand. 813 A.2d at 782-83. In *Ryan*, this Court noted that substantial evidence was presented between the first and second rulings such that the coordinate jurisdiction rule did not apply. Thus, in *Rellick-Smith*, finding that the first judge's ruling was not erroneous, and discerning no intervening change in the controlling law or substantial change in the facts or evidence, the OAJC concluded that the second judge's ruling allowing the appellees to amend their answer to include a statute of limitations defense, which the prior judge found to be waived, violated the coordinate jurisdiction rule.

The OAJC in *Rellick-Smith* did not garner a majority. The late Chief Justice Baer filed a dissenting opinion, which was joined by Justices Saylor and Mundy. Additionally, Justice Donohue filed a concurring opinion in which she emphasized her view that the procedural posture of a case has no relevance in a coordinate jurisdiction analysis. *See Rellick-Smith*, 261 A.3d at 522 (Donohue, J., concurring). Justice Donohue highlighted that, in the cases discussed by the OAJC, it was the "exceptional circumstances" which

"negated the applicability of the coordinate jurisdiction rule; the change in their procedural postures was irrelevant." *Id.*

Further, Justice Donohue described the incongruity of a finding that the coordinate jurisdiction rule does not apply simply because the conflicting rulings occur at different procedural stages of a case:

> In *Riccio*, this Court stated that when determining whether the coordinate jurisdiction rule applies, "this Court looks to where the rulings occurred in the context of the procedural posture of the case." *Riccio*, 705 A.2d at 425. This statement is a recognition that a different procedural posture reflects the progression of a case which may give rise to exceptional circumstances making the coordinate jurisdiction rule inapplicable. To read this otherwise is to suggest, for example, the following. A party files an unsuccessful motion for judgment on the pleadings. Immediately thereafter, without a change in the law or engaging in any discovery to further develop the evidence, the same party files a motion for summary judgment on the same basis as the prior motion. If the procedural posture controls the applicability of the coordinate jurisdiction rule, a new judge could grant the summary judgment motion. This is decidedly impossible under the coordinate jurisdiction rule. The sum of our precedent establishes that the coordinate jurisdiction rule applies regardless of the procedural posture of the case unless there has been a change in the law, a change in the facts or the initial ruling was clearly erroneous and following it creates a manifest injustice.

*Id.* at 523.

Although the OAJC in *Rellick-Smith* determined that a difference in procedural posture alone is insufficient to evade application of the coordinate jurisdiction rule, it did not go so far as expressly declaring that the procedural posture of a case is irrelevant to determining whether there has been a violation of the rule. Further reflection and consideration of our precedent leads us to take that step now. We hold that the coordinate jurisdiction rule applies unless there has been a change in the law; a change in the facts; or a conclusion that the initial ruling was clearly erroneous, and that following it would

create a manifest injustice. While a ruling issued at a different stage of the proceedings may give rise to one of the limited exceptions to the coordinate jurisdiction rule – for example, a change in the facts – it is the demonstration of the exceptional circumstance, not the distinct procedural posture, which renders the coordinate jurisdiction rule inapplicable.

In the case *sub judice*, DHS has not demonstrated any change in the law or facts, nor has it demonstrated that the ruling in *Ivy Hill I* was clearly erroneous. Rather, the court in *Ivy Hill II* seemingly justified its refusal to adhere to the rulings of the court in *Ivy Hill I* as follows: "Unlike *Ivy Hill I*, we are resolving [Appellant's] summary relief motion." *Ivy Hill II*, 2022 WL 1464353, at *5 n.8 (citing *Bates*, *supra*, for the proposition that "a prior ruling on preliminary objections does not preclude a contrary ruling . . . on a subsequent motion for summary judgment"). Thus, consistent with our discussion above, we find such reasoning insufficient and so hold that the court in *Ivy Hill II* violated the coordinate jurisdiction rule.

In its final argument, Appellant suggests that, notwithstanding the fact that the Commonwealth Court in *Ivy Hill II* did not reach the underlying legal issues in this case, if this Court concludes that the court below violated the coordinate jurisdiction rule, we should forego remanding the matter to the Commonwealth Court for further consideration, and instead decide, in the first instance, whether Appellant's elders may invoke the clergymen privilege under the CPSL, and, if not, whether Section 5943 is unconstitutional. As Appellant recognizes, however, such an approach would be atypical and contrary to our usual practice and procedure. *See, e.g., Robinson Township*, 83 A.3d at 925 (remanding to the Commonwealth Court for a merits decision on the substantive issues after reversing the court's decision regarding standing). We see no reason to depart from our traditional procedure in this case.

To reiterate, we vacate the lower court's order dismissing Appellant's Petition and its Motion for Summary Relief, as we conclude the court's determinations that Appellant does not have standing, and that a grant of declaratory relief would not terminate the controversy, violated the coordinate jurisdiction rule. Accordingly, we remand the case for further proceedings.

Order reversed. Case remanded.

Justices Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Brobson did not participate in the consideration or decision of this matter.